MARY GRIFFIN BARTON
*vs.*
WINIFRED M. BECK ESTATE

Cumberland.　Opinion, November 20, 1963.

*Richard M. Sanborn,* for plaintiff.

*Arthur A. Peabody,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WILLIAMSON, C. J.　This case is before us on appeal from the disallowance of the will of Winifred M. Beck in the Supreme Court of Probate. The will was allowed in the Probate Court without a contest. On appeal to the Court

below the contestant, an heir of the deceased, raised issues of testamentary capacity and undue influence.

First: At the outset before reaching the merits the proponent of the will contends that the presiding Justice in the Supreme Court of Probate found (a) lack of testamentary capacity, and (b) undue influence; that such findings are irreconcilable and inconsistent; and that without more the judgment should be vacated.

From our review of the opinion of the Justice, we are satisfied that he did not base his decision on a finding of lack of testamentary capacity. On the contrary, we conclude that undue influence was the ground for disallowance of the will.

Under the heading "testamentary capacity" the Justice said:

> "The testimony [of the contestant's witnesses] imposed upon the proponent the burden of satisfying the Court that the will was the free, untrammeled and intelligent expression of the wishes and intention of the testatrix. To the contrary, the explanation given in the testimony of the principal beneficiary and his attorney satisfies the Court that the will was not the untrammeled expression of the testatrix, but was the product of a weakened mind imposed upon by those in whom she had placed her trust."

Under the heading "undue influence" the Justice repeated the quoted statement with insignificant differences.

This is the language of *undue influence* not of testamentary capacity. "Was there proof of facts from which the presiding justice could properly infer and conclude that the mind of Christos Dilios at the time he executed the instrument now before us for interpretation was not free and untrammelled?" *Casco Bk. & Tr. Co. and Tomuschat, Applts.*, 156 Me. 508, 537, 167 A. (2nd) 571.

"Fraud and undue influence in this connection mean whatever destroys free agency and constrains the person 'whose act is under review to do that which is contrary to his own untrammelled desire." *Neill* v. *Brackett,* 234 Mass. 367, 126 N. E. 93, 94.

Testamentary capacity is concerned with the "sound and disposing mind" and not with undue influences operating upon such a mind. *Waning, Applt.,* 151 Me. 239, 250, 117 A. (2nd) 347; *Royal et al., Appellants,* 152 Me. 242, 245, 127 A. (2nd) 484. This of course does not deny the bearing of susceptibility to influence in determining the strength of the mind under consideration.

The principle stated by the Justice was not applicable to testamentary capacity but to undue influence. It is unnecessary, therefore, to consider questions of irreconcilability or inconsistency raised by the proponent. The factual premise on which the issue rests does not here exist.

Second: With the elimination of the issue of testamentary capacity, the decisive issue is whether there was evidence warranting the finding of undue influence and the disallowance of the will in its entirety.

The governing principles of law are well established. The findings of fact of the Justice in the Supreme Court of Probate stand unless clearly erroneous.

"Unless the decrees of the presiding justice of the Supreme Court of Probate are clearly erroneous, there is no other course for us to follow except to overrule the exceptions and affirm the decrees.

"This is the admonition given us by Rule 52 (a) M.R.C.P. which reads in part as follows:

'Findings of fact shall not be set aside *unless clearly erroneous,* (emphasis supplied) and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'

"As pointed out in the very recent decision of *Harriman* v. *Spaulding*, 156 Me. 440, this rule now spells out in definite and positive language the applicable standard previously set forth in a long line of decisions of this court, and applies to findings of a single justice sitting in the Supreme Court of Probate." *Casco Bk. & Tr. Co. and Tomuschat, Applts., supra,* at 537.

"Undue influence" has been defined in language repeatedly approved by our Court, as follows:

"By undue influence in this class of cases is meant influence, in connection with the execution of the will and operating at the time the will is made, amounting to moral coercion, destroying free agency, or importunity which could not be resisted, so that the testator, unable to withstand the influence, or too weak to resist it, was contrained to do that which was not his actual will but against it." *Rogers, Appellant,* 123 Me. 459, 461, 123 A. 634; *Casco Bk. & Tr. Co. and Tomuschat, Applts., supra,* at 513; *Thibault, Applt.* v. *Est. Fortin,* 152 Me. 59, 61, 122 A. (2nd) 545; *Royal et al., Appellants,* 152 Me. 242, 250, 127 A. (2nd) 484.

The burden of proof of establishing undue influence is upon the contestant. *Casco, supra.*

When there exists a confidential or trust relationship on the part of a beneficiary with the alleged testator, the law requires "the closest scrutiny and most careful examination of all of the surrounding circumstances. . . Such a condition might, as a matter of fact, cast upon the proponent the burden of explanation, and the absence of satisfactory explanation would be an additional fact of more or less weight." *O'Brien, Appellant,* 100 Me. 156, 169, 60 A. 880.

The risk of persuasion, that is to say the burden of proof, is not thereby changed. At most, the confidential

or trust relationship on the facts as they develop in the given case may permit, but may not require, a finding of undue influence. As the Court said in *O'Brien, supra,* at 169: "The issue is one of fact, to be determined by the tribunal to which it is submitted, and we do not approve of a statement to the effect that any particular evidence is sufficient to change the issue from one of fact to one of law." See also *Mooney* v. *McKenzie,* 324 Mass. 685, 88 N. E. (2nd) 546; *Reilly* v. *McAuliffe,* 331 Mass. 144, 117 N. E. (2nd) 811; 57 Am. Jur., *Wills* § 389.

> *"Extent of evidence to rebut presumption.* Inferences of undue influence which arise from the fact that testator and beneficiary were in relations of trust and confidence, are inferences of fact, and may be rebutted by any competent evidence. If the evidence makes out a strong case of undue influence, the proponent must meet such evidence with a high degree of proof." 3 Bowe-Parker: Page on Wills § 29.82.

See *In Re Hess's Will* (Minn.) 31 Am. St. Rep., 665, with annotation at p. 670.

The Justice could properly have found as follows:

Miss Winifred M. Beck, eighty years of age, executed the purported will at Freeport on March 24, 1960. For many years prior to 1959 she lived in Boston where she had been employed as a secretary until retirement. Occasionally she had made visits to Freeport where she was born.

In 1959 on the death of two cousins she returned to Freeport. Russell G. Jeannotte (the proponent), an undertaker in Freeport, and Miss Bertha E. Rideout, his attorney, brought her from Boston. She occupied a house formerly belonging to a deceased cousin and then owned by Mr. Jeannotte at a rental of $150 a month, an amount fixed by the rental she had been paying in Boston. Mr. Jeannotte arranged that Mrs. Langley who had served as

housekeeper for the deceased cousins should continue in a like capacity with Miss Beck. Within a few days he became Miss Beck's confidential advisor. He took over the management of her affairs. For example, he did her banking, kept financial records, and prepared checks for her signature. There was ample evidence to satisfy the Court that Mr. Jeannotte acted in a fiduciary capacity with relation to Miss Beck and her affairs.

From 1959 Miss Beck's mind was deteriorating. She was forgetful, easily confused, and did not see well. Her mind was seriously weakened.

In March 1960 Mr. Jeannotte informed his attorney, Miss Rideout, that Miss Beck wanted to see her. The attorney met with Miss Beck at her home on the housekeeper's "day out". A week later, again on the housekeeper's "day out," the purported will drafted by the attorney was executed. A former will obtained by the attorney was destroyed. There was no evidence introduced of its provisions.

Miss Beck owned securities of substantial but unstated value and also received an annuity of an unstated amount. In December 1960 Mr. Jeannotte received from Miss Beck securities including 93 shares of American Telephone & Telegraph Co. stock and 165 shares of General Motors Corporation common stock. The transfer of the securities was handled by Miss Rideout. His explanation that he had no knowledge of the gift prior to its receipt was not accepted by the Justice.

Mr. Jeannotte continued to act as Miss Beck's confidential advisor and trusted friend, plainly in a fiduciary capacity, until her death on September 11, 1961.

Under the purported will Mr. Jeannotte received the entire estate inventoried at about $13,000, apart from a bequest of $1,000 to Mrs. Philbrick, a lifelong friend. He was also named executor without bond.

Mr. Jeannotte in petitioning for probate of the will stated that there were no known heirs, although neither he nor Miss Rideout had made any inquiries to this end. He was acquainted with Mary G. Barton, the contestant, and at her request had notified her of Miss Beck's death. There was no evidence, however, that he in fact knew that she was the daughter of a cousin of the deceased and an heir.

It will serve no useful purpose to rehearse the facts in more detail. The plain fact is that the confidential and trusted advisor of this elderly spinster with weakened mind from the time of her return to the place of her birth until her death, under a will drawn by his attorney and not by an independent advisor, winds up with the entire estate, except the $1,000 bequest to an old time friend.

We are satisfied that the facts which the Justice was entitled to find with the inferences reasonably drawn therefrom warranted a judgment disallowing the will on the ground of undue influence. The proponent has failed to establish that the findings of fact were "clearly erroneous." The will fails.

In reaching the result, we do not agree wholly with the reasoning of the Justice. For example, we do not agree that a presumption of undue influence arose from the facts. In the *O'Brien* case, *supra,* we have noted that a confidential relationship does not under our law create a presumption compelling "a finding of the presumed fact (i.e. undue influence) in the absence of contrary evidence." *Hinds* v. *John Hancock Ins. Co.,* 155 Me. 349, 354, 155 A (2nd) 721. Here we have the confidential relationship as a fact from which with other facts the fact finder could properly infer undue influence.

It is apparent from the findings that the Justice applied the correct rule and did not rely on a presumption. He was affirmatively satisfied "that the will was not the un-

trammeled expression of the testatrix, but was the product of a weakened mind imposed upon by those in whom she had placed her trust."

The attack is directed against the entire will. There is obviously nothing in itself unusual, improper, or suspicious in a legacy of $1,000 to Mrs. Philbrook an old friend. We are unable, however, on this record to separate the possibly good from the bad, and so the entire will must fail. See *Mooney* v. *McKenzie, supra; Old Colony Trust Co.* v. *Bailey,* 202 Mass. 283, 88 N. E. 898; *Harrison's Appeal from Probate,* 48 Conn. 202.

The proponent contends that certain evidence was erroneously received and was prejudicial. From our study of the record we are satisfied that, even assuming error in admission, there was no prejudice therefrom to the proponent.

Whether the petition for probate of the will was properly before the Court can hardly have been prejudicial. Certainly questions relating to knowledge or lack of knowledge of the existence of heirs were relevant and were based in part at least upon the statement "no known heirs" in the petition itself signed by Mr. Jeannotte, the named executor. The failure to search for heirs, and to inquire, for example, of the contestant about the family and relatives of the deceased, were facts bearing upon the conduct of the proponent in his relationship with Miss Beck.

The death certificate was improperly admitted to establish by itself the cause of death as arteriosclerosis. This fact, however, was of little significance. There was ample evidence to establish Miss Beck's mental and physical condition at the time the will was drawn and executed.

The evidence of the housekeeper as to the soundness of Miss Beck's mind was erroneously admitted. The housekeeper was not a witness to the will. She was entitled to

give her observations, and did so, but not her opinion. *Mitchell, et al., Re: Will of Emma J. Loomis*, 133 Me. 81, 174 A. 38; *Martin, Appellant*, 133 Me. 422, 179 A. 655; *Heath et al., Applts.*, 146 Me. 229, 237, 79 A. (2nd) 810. In the light of her evidence the receipt of the opinion was not prejudicial. Likewise, there was no prejudicial error in the evidence of a beauty parlor operator about the competence of Miss Beck.

Lastly, it is urged that evidence of gifts of securities some months following the execution of the purported will had no bearing on the issue of undue influence. In our view, the evidence had some bearing in establishing the mental condition of this aged woman and the influences at work upon her from 1959 to her death. The full story of the influence of Mr. Jeannotte and of his attorney upon Miss Beck when she made the purported will, properly includes a chapter devoted to the receipt of such a substantial gift by the confidential and trusted advisor. The weight given to evidence before and after the execution of the purported will was for the determination of the Justice in the Supreme Court of Probate. The proponent gains nothing from his objections to the evidence.

The entry will be

*Appeal denied.*