**In re WILL of Margaret B. FENWICK.**

Supreme Judicial Court of Maine.

Nov. 25, 1975.

Hart & Stinson, P.A. by Ronald A. Hart, Bath, for appellants.

David A. Nichols, Richard A. McKittrick, Camden, for appellee.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This appeal from a decree of the Supreme Court of Probate allowing the Will of Margaret Fenwick underscores the importance of the distinction which the law draws between an inference and a presumption.[1] A Justice of the Supreme

---

[1]. The distinction, as it bears on the case now before us, was highlighted in *In re Dilios' Will*, 156 Me. 508, 167 A.2d 571 (1960), where it was said:

"The exercise of undue influence may be shown by circumstantial evidence, and the provisions of the will, and the circumstances attending its execution, may be sufficient to warrant a finding against its validity, but it is not correct to say that a mere showing of such circumstances, even in the absence of an explanation by the party implicated, creates a presumption of law that the will is invalid, . . ." 167 A.2d at 576, quoting from *Friedersdorf v. Lacy*, 173 Ind. 429, 90 N.E. 766, 769.

Court of Probate reversed a decree of the Knox County Probate Court which had disallowed the Will, thus denying it legal effect. The disallowance was based on a finding that the Will had resulted from undue influence and fraud practised on testatrix by a nephew and chief beneficiary under the Will, Glenn Prescott, Jr.

The Justice in the Supreme Court of Probate determined, however, that the contestants had not sustained their burden of proof on the issues of fraud and undue influence by the requisite preponderance of the evidence.

■ We cannot say that such determination was clearly erroneous. Rule 52(a), M.R.Civ.P.[2]

We deny the appeal.

The evidence at trial focused on the chronology of events occurring in the interim between the death of the testatrix' husband, John Fenwick, in April of 1970, and the execution of the challenged Will in February of 1971.

Up until the time of his death, Mrs. Fenwick enjoyed an extremely close and happy relationship with her husband. Following his death, Mrs. Fenwick became anxious and depressed and her physical and emotional condition deteriorated rapidly.

It was about this time that a nephew of Mrs. Fenwick, Glenn Prescott, began to assist her with her affairs. He advised her how to go about paying her household employees; he prepared her income tax returns; and he arranged for the payment of her property taxes.

Between April and October of 1970, Prescott received gifts from his aunt consisting of a power rototilling garden machine, a power lawn mower, and a 1969 Oldsmobile.

In October 1970, Mrs. Fenwick's illness manifested itself by an attempt at self-destruction. The attempt was thwarted, but upon her return from the hospital, Mrs. Fenwick continued to be anxious and depressed.

In the months following her return, the testatrix made several other gifts to Mr. Prescott, including a $9,000.00 savings account and a twelve-acre parcel of land in Lincolnville. Further, she placed Prescott's name with hers on $16,000.00 in government bonds and put two bank accounts with an aggregate value of $30,000 in their joint names.

In January of 1971, testatrix granted Prescott a broad and general power of attorney and access to her safe deposit box.

In February of the same year, testatrix, accompanied by Prescott, went to her attorney's office for the purpose of drafting and executing a new will. A discussion was held in the presence of Mr. Prescott in which testatrix instructed her attorney as to the testamentary disposition she desired. Testatrix and Prescott departed and returned the same day at which time the Will was executed. Although the execution did not take place in his immediate presence, Prescott was shown the Will before it was signed by Mrs. Fenwick.

The Will provided for a small bequest to a local church, left $500.00 to each of Mrs. Fenwick's fourteen nieces and nephews, and bequeathed the remaining property, totaling about $100,000.00, to Glenn Prescott. This scheme of disposition marked a significant departure from Mrs. Fenwick's first Will which had omitted one of the nieces entirely, contained no bequest to the Church, and which provided that thirteen of the nieces and nephews, including Glenn Prescott, were to share in the estate equally.

---

2. The "clearly erroneous" rule has specifically been held applicable to review of the findings of the Supreme Court of Probate including findings on the question of undue influence. *In re Longworth*, Me., 222 A.2d 561 (1966); *Barton v. Beck's Estate*, 159 Me. 446, 195 A.2d 63 (1963); *In re Dilios' Will*, supra.

Finally, in May 1973, testatrix ended her life by her own hand. The legal contest which culminated in this appeal ensued.

At oral argument, appellants abandoned their claim of fraud and stipulated testatrix' testamentary capacity at the time she executed her Will. Thus, only the undue influence issue remains before us.

This Court has spoken on the question of undue influence on numerous occasions. An early description of the concept is found in *Barnes v. Barnes*, 66 Me. 286, 297 (1876), in which it was said, "The influence must amount either to deception or else to force or coercion, in either case destroying free agency."

This description was amplified in *Rogers, Appellant*, 123 Me. 459, 123 A. 634 (1924). The *Rogers* Court explained:

"By undue influence in this class of cases is meant influence, in connection with the execution of the will and operating at the time the will is made, amounting to moral coercion, destroying free agency, or importunity which could not be resisted, so that the testator, unable to withstand the influence, or too weak to resist it, was constrained to do that which was not his actual will but against it." 123 Me. at 461, 123 A. at 636.

The description has endured over the years and has been frequently cited and restated. *In re Cox' Will*, 139 Me. 261, 29 A.2d 281 (1943); *In re Haley's Estate*, 147 Me. 173, 84 A.2d 808 (1952); *Thibault v. Fortin's Estate*, 152 Me. 59, 122 A.2d 545 (1956); *In re Dilios' Will*, supra; *Barton v. Beck's Estate*, supra; *Fitanides v. Stickney's Estate*, 161 Me. 343, 212 A.2d 209 (1965); *In re Longworth*, supra.

■ Undue influence need not be proven by direct evidence. By its nature undue influence is difficult to establish through direct evidence and must admit of proof by circumstantial evidence and the inferences to be drawn therefrom. *In re Dilios' Will*, supra, at 577.

■ Most prominent among the circumstances which have been taken as evidence of undue influence are,

(1) the existence of a confidential relationship between the testator and the one who is asserted to have influenced him;

(2) the fact that the testator has disposed of his property in an unexpected or unnatural manner.
See e. g. *Fitanides v. Stickney's Estate*, supra, (unnatural disposition); *Barton v. Beck's Estate*, supra, (confidential relationship); *In re Dilios' Will*, supra, (illicit relationship and unnatural disposition).

■ Maine has taken the position, however, that proof of such circumstances does not raise a *presumption* of undue influence. It simply permits the drawing of an *inference* that such was present. *In re Dilios' Will*, supra; *Barton v. Beck's Estate*, supra.

The inference, however, must be based on more than mere suspicion or conjecture. *In re Dilios' Will*, supra.

"[Undue influence] is never inferred from mere opportunity or interest, though these facts if shown should weigh with other facts. But kindness, entreaty, the offer of inducement to gain the making of a will in one's favor, is legitimate, so long as he who made the will had the free choice to make it or not." *Rogers, Appellant*, supra, 123 Me. at 461, 123 A. at 636.

Moreover, "mere inequality, however great, in the distribution of . . . property . . . is no evidence of undue influence. . . . Few wills could stand if such were the test." *Paradis, Appellant*, 147 Me. 347, 361, 87 A.2d 512, 519 (1952).

In the case now before us, it can be fairly said that appellants succeeded in establishing the following facts:

(1) Mrs. Fenwick was physically and emotionally unstable after her husband's

death and could have been susceptible to Glenn Prescott's influence;

(2) A confidential relationship existed between testatrix and Mr. Prescott;

(3) Prescott received valuable inter vivos gifts from his aunt; and

(4) Under a Will executed while testatrix and Prescott continued in their confidential relationship, Prescott received an inheritance far exceeding that of his fellow nieces and nephews.

It was nowhere demonstrated, however, that Glenn Prescott took any affirmative action in securing his large inheritance. There was no evidence that he suggested the testamentary scheme which Mrs. Fenwick directed her attorney to implement. In fact, there was evidence that Mrs. Fenwick had made her decision to execute a new will immediately after her husband's death before her nephew became deeply involved in managing her affairs. Further, the new Will contained bequests to two beneficiaries not included in the earlier document.

■ We think that the facts of this case *would* permit an inference of undue influence.

However, keeping in mind that the trial Justice had an opportunity to observe the demeanor of the various witnesses, especially that of Glenn Prescott, we cannot say that his decision *not to draw such an inference* was clearly erroneous.[3]

■ In their brief and at oral argument appellants have requested that this Court allow appellants' counsel fees to be paid out of the estate.

No statute has been cited as authority for this Court to make such allowance, nor has there been any reported case law in support of appellants' prayer called to our attention.

We conclude, then, this Court must not allow appellants' counsel fees to be paid out of the estate.

The entry must be,

Appeal denied. Case remanded to the Supreme Court of Probate with Instructions to Remand to the Probate Court for action consistent with this opinion.

All Justices concurring.

3. See *Sheets v. Sheets' Estate*, Me., 345 A.2d 493 (1975), where application of this legal principle occasioned an opposite result.