**ESTATE OF Mary DODGE.**

Supreme Judicial Court of Maine.

Argued June 15, 1990.
Decided July 6, 1990.

Mark L. Haley, Arlyn Weeks (orally), Conley, Haley & O'Neil, Bath, for plaintiff.

Paul F. Macri (orally), John E. Sedgewick, Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

■ Contestants Winfred Dodge and William Dodge, brother and nephew of the testatrix, Mary Dodge, appeal from the order of the Lincoln County Probate Court [1] (*Berry, J.*) admitting the 1988 will of Mary Dodge to probate and denying their petition for probate of a will she made in 1987. They maintain that the court erred in deciding that they failed to carry their burden to establish that Mary Dodge lacked testimentary capacity at the time the 1988 will was executed and that the will was the product of undue influence on the part of Alan Dodge, a nephew of Mary Dodge and the proponent of the 1988 will. Finding no error, we affirm the judgment.

Mary Dodge died in East Boothbay in September 1988. She was survived by her brother, Winfred Dodge and his two children, William and Nancy, and Alan Dodge and Helen Braun, the children of her deceased brother Elmer. In October 1988, Alan petitioned the Probate Court to be appointed the estate's personal representative in accordance with a will dated April 8, 1988, a time when Mary was living with ·Alan.[2] Winfred and William presented a will dated July 13, 1987, a time when Mary was living with Winfred, and petitioned the Probate Court for formal probate proceedings.[3] The Probate Court allowed the 1988 will and denied the petition for probate of the 1987 will.

■ In all instances the burden of establishing by a preponderance of the evidence the due execution of a will is upon its proponent, in this case as to the 1988 will, Alan Dodge. *Estate of Turf,* 435 A.2d 1087, 1089 (Me.1981); 18–A M.R.S.A. § 3–407 (1981). Once prima facie evidence of that fact is introduced, as it was here by evidence presented by Alan, the contestants, in this case Winfred and William, bear the burden of proving that probate should not be ordered because of a "lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation." 18–A M.R.S.A. § 3–407; *see, e.g., Estate of Record,* 534 A.2d 1319, 1321–23 (Me.1987). Because the contestants had the burden, the Probate Court's findings on those issues will not be disturbed unless the evidence compelled a different result than that reached. *See Standish Tel. Co. v. Saco River Tel. & Tel. Co.,* 555 A.2d 478, 480 (Me.1989).

---

1. This is a direct appeal from the Probate Court. 18–A M.R.S.A. § 1–308 (1981). We review the court's findings for clear error. *Estate of Rosen,* 447 A.2d 1220, 1221 (Me.1982).

2. The 1988 will revoked all prior wills and left Mary Dodge's entire estate to Alan Dodge.

3. The 1987 will left Mary Dodge's East Boothbay residence, the major asset of the estate, and certain valuables to Winfred, her automobile to Alan, and the residue to be shared among Winfred (one-half) and the four nieces and nephews (one-eighth each).

The contestants contend that the testatrix, who was seventy-nine years old and suffering from a brain tumor for which she underwent radiation treatment during the period preceding execution of the 1988 will, did not have the competence necessary to execute a valid will. While there was some evidence that during the period in which the will was executed Mary Dodge displayed signs of fatigue, confusion and difficulty in communicating, considerable evidence was presented that she possessed at least the modest degree of competence sufficient to uphold the court's finding of testamentary capacity. *Estate of Rosen,* 447 A.2d 1220, 1222 (Me.1982); *In re Leonard,* 321 A.2d 486, 488 (Me.1974). While the evidence was conflicting, it did not compel a finding that the contestants overcame the presumption of testamentary capacity. 18–A M.R.S.A. § 3–407; *Estate of Blouin,* 490 A.2d 1212, 1215 (Me.1985); *Rosen,* 447 A.2d at 1223.

The contestants also argue that the court erred in refusing to find that the will was the product of undue influence. "The most prominent circumstances regarded as evidence of undue influence are:

'1) the existence of a confidential relationship between the testat[rix] and the one who is asserted to have influenced [her]; [and]

2) the fact that the testat[rix] has disposed of [her] property in an unexpected or unnatural manner.' "

*In re Estate of Bridges,* 565 A.2d 316, 317 (Me.1989) (quoting *In re Will of Fenwick,* 348 A.2d 12, 15 (Me.1975)). Undue influence must be proved by clear and convincing evidence. *Russo v. Miller,* 559 A.2d 354, 357 (Me.1989).[4] In this case the court found the existence of a confidential relationship between Alan and Mary Dodge, but did not find that Mary disposed of her property in an unexpected or unnatural manner.

In support of the contention that the 1988 will effected an unexpected or unnatural disposition of property, the contestants urge that it be compared with the testatrix's 1987 will executed just after learning that she had cancer and during her stay with contestant Winfred Dodge. The court considered each of these wills and, in addition, an earlier will executed in 1981.[5] *Rosen,* 447 A.2d at 1221, in deciding that the last of these marked a return to the testamentary plan in effect prior to her diagnosis. *See Bridges,* 565 A.2d at 317. Contrary to the assertions of Winfred and William, the evidence did not compel the court to find to a high probability that the testatrix's 1988 will was the result of influence amounting to moral coercion so that the testatrix, unable to withstand the influence, did what " 'was not [her] actual will but against it.' " *Bridges,* 565 A.2d at 317 (quoting *In re Rogers,* 123 Me. 459, 461, 123 A. 634 (1924)).

The entry is:

Judgment affirmed.

All concurring.

---

**4.** *Taylor v. Commissioner of Mental Health,* 481 A.2d 139 (Me.1984), provides that when proof by clear and convincing evidence is required, the factfinder must be convinced of the essential elements to a high probability. *Id.* at 153.

**5.** The 1981 will left the East Boothbay residence to Alan, bequests of $200 to each of the other three children of her siblings, and the residue to Winfred. Most of the value of the estate was in the residence.