### NORTH AMERICAN LIFE & CASUALTY CO.

v.

### Dale A. BUTLER, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 1, 1993.

Decided April 13, 1993.

Thomas J. Pelletier, Solman & Hunter, P.A., Caribou, for plaintiff.

Eugene J. McLaughlin, Presque Isle, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Dale and Elizabeth Butler [the "Butlers"] appeal from a Superior Court (Aroostook County, *Pierson, J.*) judgment, following a bench trial, declaring Pamela and Heather Curry [the "Currys"] entitled to the proceeds of a life insurance policy issued on the life of Richard Butler. The Superior Court, finding undue influence, awarded the proceeds to the Currys despite the fact that the Butlers were the designated beneficiaries of the policy at the time of Richard Butler's death. On appeal, the Butlers challenge the Superior Court's factual findings that led it to conclude that they exerted undue influence on Richard Butler and argue that the trial court's denial of their motion for judgment was erroneous. *See* M.R.Civ.P. 50(d). Finding no reversible error, we affirm the judgment.

*Factual and Procedural Background*

On March 15, 1990, Richard Butler died due to complications from cancer. At the time of his death, Butler owned a life insurance policy with a benefit payable on his death of approximately $39,000. The named beneficiaries under this policy were Dale (Richard Butler's brother) or Elizabeth Butler (Richard Butler's sister-in-law). The Butlers were designated as Richard's beneficiaries on March 5, 1990, ten days before Richard's death. Prior to this change, Pamela A. Curry (Richard's fiancée) and Heather D. Curry (Pamela's daughter) were the designated beneficiaries.

Following Richard's death, the insurer and nominal plaintiff, North American Life & Casualty, filed this action in the nature of interpleader/declaratory judgment to determine whether the Currys or the Butlers were entitled to the proceeds of the life insurance policy in question. *See* M.R.Civ.P. 22. The Currys answered and cross-claimed alleging, *inter alia,* that the change in beneficiaries was procured by means of undue influence or duress and that Richard lacked capacity at the time the change was made. Following a bench trial, the Superior Court (*Pierson, J.*) declared the Currys entitled to the proceeds of the policy and rendered judgment in their favor on their claim of undue influence against the Butlers. The Butlers filed this timely appeal.

I.

We have previously explained that:

By undue influence ... is meant influence, in connection with the execution of [a beneficiary designation card] and operating at the time the [beneficiaries are designated], amounting to moral coercion, destroying free agency, or importunity which could not be resisted, so that the [policy holder], unable to withstand the influence, or too weak to resist it,

was constrained to do that which was not his actual will but against it. *See In re Will of Fenwick*, 348 A.2d 12, 15 (Me.1975) (citations and quotations omitted) (discussing undue influence in connection with execution of wills). Undue influence must be proved by clear and convincing evidence. *Estate of Dodge*, 576 A.2d 755, 757 (Me.1990). "[I]f it is shown that there was fraud or undue influence or lack of mental capacity, [an attempted change of beneficiary] will be regarded as inoperative." *Goodale v. Wilson*, 134 Me. 358, 361, 186 A. 876, 877 (1936). "Acts of undue influence sufficient to invalidate a will [are also sufficient to] invalidate a change of beneficiary." *See id.* at 362, 186 A. at 877–78. The Superior Court expressly found that the Currys had proven their claim of undue influence by clear and convincing evidence. We will not disturb the findings of the trial court unless they are clearly erroneous. *See In re Will of Fenwick*, 348 A.2d at 14.

While the parties agree that the proper legal standard for a finding of undue influence was applied by the trial court, the Butlers challenge the trial court's factual findings to which the applicable standard was applied. In particular, the Butlers contend that the trial court erred in finding that: (1) the Currys were the designated beneficiaries for almost 14 years prior to Richard's death; (2) Richard had little close contact with his family members for the last 14 years of his life; and (3) Richard was receiving morphine when he discussed beneficiary changes with Elizabeth Butler. The Butlers also assign as error the trial court's "failure" to give any weight to: (1) a letter from a Dr. Weber; (2) the testimony of Deborah Keirstead; and (3) the fact that the Butlers took care of Richard from November of 1989, when he became sick, until his death. Our review of the record, however, reveals no clear error, and accordingly, we will not disturb the trial court's findings.

## II.

■ The Butlers also argue that the trial court improperly inferred undue influence from "mere opportunity or interest" in violation of *In re Will of Fenwick's* statement that such an inference is improper. *See In re Will of Fenwick*, 348 A.2d 12, 15 (Me. 1975). This argument is also without merit.

*In re Will of Fenwick* provides that undue influence "[b]y its nature ... is difficult to establish through direct evidence and must admit of proof by circumstantial evidence and the inferences to be drawn therefrom." *Id.* The *Fenwick* court listed: (1) the existence of a confidential relationship; and (2) an unexpected or unnatural disposition of property as being the "most prominent" evidence of undue influence. *See id.* at 15. In concluding that a confidential relationship existed between Elizabeth Butler and Richard, the trial court relied on evidence that established that: Richard essentially placed his financial affairs in Elizabeth's hands following admission to the hospital; the Butlers, after Richard's admission to the hospital, spent time almost daily with Richard; and that on March 9, 1990, Elizabeth Butler obtained a power of attorney from Richard. The trial court also noted that there was substantial evidence that Richard suffered some infirmity due to his illness and medication. Further, the trial court relied on Richard's abrupt change of beneficiaries just 10 days before his death to support its implicit finding of unexpected or unnatural disposition of property. *See id.* The trial court's conclusions that there was a confidential relationship and an unexpected disposition of the life insurance proceeds are supported by the evidence. Thus, the trial court could properly draw the inference that undue influence was present. *See In re Will of Fenwick*, 348 A.2d at 15. There was no clear error.

The entry is:

Judgment affirmed.

All concurring.