MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 18
Docket:       And-19-47
Argued:       November 4, 2019
Decided:      January 30, 2020
Revised:      June 23, 2020

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

## ESTATE OF DAVID H. WASHBURN

JABAR, J.

[¶1]  Laurie Kennedy appeals from an order of the Androscoggin County Probate Court (*Dubois, J.*) denying her petition for formal adjudication of intestacy and appointment of personal representative of the estate of her former husband, David H. Washburn, on behalf of their minor son.  Laurie contends that the Probate Court erred in finding that (1) David Washburn had the requisite testamentary capacity to execute a will, and (2) there was insufficient evidence to support a claim of undue influence.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts are derived solely from the court's explicit factual findings.  *See Klein v. Klein*, 2019 ME 85, ¶ 6, 208 A.3d 802.  David

---

* Although Justice Hjelm participated in the appeal, he retired before this opinion was certified.

Washburn died in 2016 at the age of fifty-one, survived by his wife, Michelle Washburn, and his son. Laurie Kennedy is the mother of David's son. David and Laurie are both deaf. Despite his disability, David lived an active and independent life, working as a welder at Bath Iron Works (BIW) for more than twenty-seven years. He owned his own home and engaged in multiple financial transactions, including real estate transactions and the purchase of automobiles on credit. He listed Michelle as the beneficiary of his BIW retirement account. These transactions were accomplished without the aid of sign language interpreters.

[¶3] Laurie and David's son was born in 2002. Sometime thereafter, David and Laurie litigated a parental rights and responsibilities action concerning their son, and David retained attorneys William Cote and Heather Seasonwein to represent him in that matter. During the course of that representation, sign language interpreters were employed at court events, but were not used during meetings or consultations between David and his attorneys.

[¶4] David and Michelle met in 2007 or 2008 and were married a short time thereafter. Michelle is not deaf and, at the beginning of their relationship, did not know how to communicate using American Sign Language (ASL).

Michelle learned some sign language over the course of her marriage to David, and took a formal class on the subject in 2012. Although Michelle does not speak ASL well enough to qualify as an interpreter, she was able to communicate adequately with David using ASL, notes, lip reading, and text messages.

[¶5] In 2014, Michelle and David retained the services of Attorney Seasonwein, this time in connection with their petition to adopt Michelle's grandson. The Probate Court requested that David and Michelle execute wills incident to the adoption proceedings. Accordingly, David and Michelle executed wills prepared by Seasonwein. Seasonwein met with Michelle and David to draft the wills and communicated in her usual manner with David, while also enlisting Michelle to interpret via ASL. David made clear to Seasonwein, through these mixed forms of communication, that he wanted Michelle to have his house in the event of his death and that, if she predeceased him, the house should go to his son and Michelle's grandson. In addition, David wanted specific bequests set aside for his son. Seasonwein was certain that David knew what assets made up his estate. The parties stipulated to the fact that David's will was duly executed.

[¶6]   Not long after they executed their wills, David and Michelle separated.  Despite their separation, they did not divorce and remained friends.  David did not amend or revoke his will, nor did he change the beneficiary designation on his retirement account.

[¶7]  On September 22, 2016, shortly after David's death, Michelle filed with the Androscoggin County Probate Court an application for informal probate of David's will and appointment of her as personal representative.  She was duly appointed as personal representative of David's estate on October 10, 2016.  Laurie later filed a petition on behalf of her and David's son to remove Michelle as the personal representative and for formal adjudication of intestacy, seeking to invalidate the will that Michelle had submitted for probate on the grounds of lack of capacity and undue influence.  *See* 18-A M.R.S. § 3-401 (2018).  The court held a two-day hearing on the petition.  At the close of Laurie's case-in-chief, Michelle moved for a judgment as a matter of law on both the capacity and undue influence issues.  The court granted the motion in part, entering judgment in favor of Michelle with regard to Laurie's claim that Michelle had exerted undue influence over David when he executed his will, but the court denied the motion as to Laurie's claim that David lacked testamentary capacity.

[¶8] On December 11, 2018, following the completion of the bench trial, the court entered an order denying Laurie's petition, "finding that [David] had the requisite testamentary capacity to execute his last will and testament." According to the court, "[there] is nothing that suggests [David] did not understand the terms of [his] will . . . ." Laurie filed a motion for additional findings, which the court also denied. *See* M.R. Prob. P. 52; M.R. Civ. P. 52(b). Laurie timely appeals from the denial of her petition pursuant to 14 M.R.S. § 1851 (2018) and M.R. App. P. 2.

## II. DISCUSSION

### A. Testamentary Capacity

[¶9] Laurie first argues that the Probate Court erred in finding that David had sufficient testamentary capacity to create a valid will. "Testamentary capacity is an issue of fact that we review for clear error," and because Laurie bore the burden of proof in the Probate Court, we "will not disturb the Probate Court's findings unless the evidence compels a different result." *Estate of O'Brien-Hamel*, 2014 ME 75, ¶¶ 26-27, 93 A.3d 689. Because Laurie filed a motion for further findings of fact, *see* M.R. Civ. P. 52(b); M.R. Prob. P. 52, we will not infer any findings from the record. *See Klein*, 2019 ME 85, ¶ 6, 208 A.3d 802. "When a party's motion for further findings, M.R. Civ. P. 52(b), has been

6

denied, we cannot infer findings from the evidence in the record. We confine our review to the court's explicit findings and determine whether those findings are supported by the record." *Sulikowski v. Sulikowski*, 2019 ME 143, ¶ 11, 216 A.3d 893.

[¶10] The party that contests the validity of a will bears "the burden of establishing lack of testamentary intent or capacity." 18-A M.R.S. § 3-407 (2018). Such a lack of capacity must be proved by a preponderance of the evidence. *Estate of O'Brien-Hamel*, 2014 ME 75, ¶ 21, 93 A.3d 689. We have described testamentary capacity as follows:

> A disposing mind involves the exercise of so much mind and memory as would enable a person to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds; and a disposing memory exists when one can recall the general nature, condition and extent of his property, and his relations to those to whom he gives, and also to those from whom he excludes, his bounty. He must have active memory enough to bring to his mind the nature and particulars of the business to be transacted, and mental power enough to appreciate them, and act with sense and judgment in regard to them. He must have sufficient capacity to comprehend the condition of his property, his relations to the persons who were or should have been the objects of his bounty, and the scope and bearing of the provisions of his will. He must have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them.

*Id.* ¶ 28 (quoting *Estate of Siebert*, 1999 ME 156, ¶ 5, 739 A.2d 365); *see also Estate of Record*, 534 A.2d 1319, 1321 (Me. 1987). "This standard requires only a modest level of competence and a general knowledge of one's assets." *Estate of O'Brien-Hamel*, 2014 ME 75, ¶ 28, 93 A.3d 689; *see also Estate of Dodge*, 576 A.2d 755, 757 (Me. 1990); *Estate of Record*, 534 A.2d 1319, 1321 (Me. 1987).

[¶11] We have not previously addressed the impact, if any, of deafness upon testamentary capacity, nor is there a well-established body of case law in other jurisdictions. However, in a majority of those cases that have reached this issue, deafness alone has been deemed insufficient to conclude that the testator lacked testamentary capacity—the focus is still on the *mental* capacity to understand the will. *See, e.g., Estate of Domenica G. Halsey*, 2008 N.Y. Misc. LEXIS 4957, at *10 (N.Y. Sur. Ct. July 25, 2008) ("Old age, forgetfulness, deafness, blindness, illiteracy, or alcoholism, standing alone, do not establish that the testator lacked testamentary capacity."); *Estate of Johnson*, No. A05-2262, 2006 Minn. App. Unpub. LEXIS 1041, at *7-8, 11, 13 (Minn. Ct. App. Sept. 12, 2006) (no abuse of discretion in finding that testamentary capacity existed despite the decedent's "frail physical health and deafness," Parkinson's disease, and fourteen medications); *Hayward v. Hayward*, 299 So. 2d 207, 210 (Miss. 1974) ("Neither deafness, blindness nor the infirmities of

old age, if they do not destroy or gravely impair the mental faculties, are sufficient to deprive one of the valuable right to dispose of his property by will, according to his own wishes."); *Teegarden v. Webster*, 199 S.W.2d 728, 729 (Ky. Ct. App. 1947) ("Deafness and retarded speech are physical and not mental handicaps."); *Tidholm v. Tidholm*, 62 N.E.2d 473, 477 (Ill. 1945) ("Old age, deafness and infirmity do not of themselves constitute proof of lack of mental capacity.").

[¶12]  In this case, the court's factual findings are grounded in competent evidence in the record and fully support a conclusion that David had the requisite capacity to execute a valid will.  Laurie does not argue that David was suffering from a cognitive deficiency or did not understand the natural objects of his bounty.  Rather, she argues that the methods of communication employed at the meeting among David, Michelle, and Seasonwein were so inadequate that he could not possibly have understood the contents of the will he signed.

[¶13]  The court was not persuaded that the communication barrier between David and Seasonwein was as significant as Laurie contends.  The court explicitly found that David "had engaged in multiple financial transactions, to include purchasing real estate, mortgaging property, and financing automobiles . . . .  No evidence was presented to establish that [David]

engaged in these transactions with the assistance of any sign language interpreters." The ability to engage in such significant financial transactions despite purported communication barriers demonstrates that David possessed a "disposing mind . . . as would enable a person to transact common and simple kinds of business with that intelligence which belongs to the weakest class of sound minds . . . ." *Estate of O'Brien-Hamel*, 2014 ME 75, ¶ 28, 93 A.3d 689. These facts were supported by competent evidence in the record and corroborated by multiple witnesses.

[¶14] Not only was David able to conduct financial business of significant magnitude without an interpreter, but the court also found that David had collaborated with Seasonwein successfully without a sign language interpreter in the past. Using the combination of communication methods she had employed in her previous dealings with David, Seasonwein understood that David wanted his home to go to Michelle or, if she predeceased him, for the house to eventually be sold and the proceeds split between his son and Michelle's grandson. Seasonwein incorporated these bequests into a draft will and went through the document with David, giving him an opportunity to indicate his understanding as to each element of the will. The court concluded, "Seasonwein was confident that [David] was aware of the assets of his estate

and that part of his wishes provided for specific bequests to Christopher." These findings fully support a conclusion that David understood the natural objects of his bounty and possessed "sufficient active memory to collect in his mind . . . the particulars or elements of the business to be transacted . . . and be able to form some rational judgment in relation to them." *Estate of O'Brien-Hamel*, 2014 ME 75, ¶ 28, 93 A.3d 689.

[¶15] The court's findings are fully supported by the record evidence and do not compel a result contrary to the court's ultimate determination that Laurie had not proved by a preponderance of the evidence that David lacked testamentary capacity.

B.     Undue Influence

[¶16]   Laurie also argues that the court erred by granting Michelle's motion for judgment as a matter of law regarding the issue of undue influence. In reviewing a disposition of a motion for judgment as a matter of law, we "view the evidence together with all justifiable inferences in the light most favorable to the party opposing the motion." *Lewis v. Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912.   If "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim," then "[t]he motion should not be granted." *Id.* (quotation marks

omitted).  Our review of this issue is different than our review of the court's finding of mental capacity following the conclusion of the bench trial.  Because Laurie's undue influence claim was disposed of in a judgment as a matter of law, we review the entire evidentiary record before the trial court at the time of the motion in the light most favorable to the nonmoving party.[1]  *Chapman v. Robinson*, 2012 ME 141, ¶ 9, 58 A.3d 1123.

[¶17]  The party contesting the will on the basis of undue influence has the burden of establishing by clear and convincing evidence that the will was the result of undue influence.  18-A M.R.S. § 3-407; *Estate of Lewis*, 2001 ME 74, ¶ 7, 770 A.2d 619.  Undue influence has been defined as

> [i]nfluence in connection with the execution of the will, and operating at the time the will is made, amounting to moral coercions, destroying free agency, or opportunity which could not be resisted, so that the testator, unable to withstand the influence,

---

[1] We again note that in a jury-waived proceeding, when a defendant moves for judgment as a matter of law at the close of the plaintiff's case, a court has two options.  It may review the evidence in the light most favorable to the nonmoving party and, on that basis, determine whether that party has presented evidence that *could* support a judgment in that party's favor.  Alternatively, the court may make provisional factual findings based on the evidence presented to that point in the proceedings and rule on the defendant's motion based on those findings.  *See Nightingale v. Leach*, 2004 ME 22, ¶ 2, 842 A.2d 1277; *Smith v. Welch*, 645 A.2d 1130, 1132 (Me. 1994).  The court's election between these two approaches will have a significant effect on our standard of review.  If the court proceeds with the former alternative and grants the defendant's motion, we examine the record to determine if the record contains *any* evidence and justifiable inferences that would allow the plaintiff to survive the motion.  *Nightingale*, 2004 ME 22, ¶ 2, 842 A.2d 1277.  If, on the other hand, the court proceeds with the latter alternative, on appeal we will accept the *facts* as found by the court if supported by the record and determine if those findings support the court's ruling on the motion.  *Id*. Here, the court made clear that it was examining the evidence in the light most favorable to Laurie, thus invoking the former approach, and the resulting standard of review is more favorable to Laurie.

or too weak to resist it, was constrained to do that which was not his actual will but against it.

*Estate of Horne*, 2003 ME 73, ¶ 18, 822 A.2d 1177 (quotation marks omitted).

"The most prominent circumstances regarded as evidence of undue influence are: (1) the existence of a confidential relationship between the testator and the one who is asserted to have influenced him; [and] (2) the fact that the testator has disposed of his property in an unexpected or unnatural manner." *Estate of Bridges*, 565 A.2d 316, 317 (Me. 1989); *see also Estate of Dodge*, 576 A.2d 755, 757 (Me. 1990). The presence of these circumstances gives rise to a permissive inference:

> [P]roof of such circumstances does not raise a presumption of undue influence. It simply permits the drawing of an inference that such was present. Furthermore, that inference must be based on more than mere suspicion and conjecture, and mere opportunity, interest or inequality in distribution is insufficient proof of undue influence.

*Estate of Bridges*, 565 A.2d at 317 (quotation marks omitted). We have noted that "undue influence by its nature . . . is difficult to establish through direct evidence and must admit of proof by circumstantial evidence and the inferences to be drawn therefrom." *North Am. Life & Casualty Co. v. Butler*, 623 A.2d 180, 182 (Me. 1993) (quotation marks omitted).

[¶18] In this case, the evidence presented to the court at hearing, viewed in the light most favorable to Laurie, could not support a finding that David and Michelle were in a confidential relationship. *Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912. In arguing that a confidential relationship did exist, Laurie relies heavily on the fact that Michelle acted as a nonprofessional sign language interpreter for David during their meetings with Seasonwein, describing Michelle as "the conduit of [David's] desired testamentary disposition." However, the evidence demonstrates that David also communicated with Seasonwein via gestures, notes, and lip reading. Further, David had successfully consulted with Seasonwein on other legal matters without any interpreter present, with no evidence of having had any difficulty doing so. The evidence cannot support a conclusion that Michelle was an informational gatekeeper for David, using her ability to hear and speak to exert her influence over David. Further, the evidence does not indicate that Michelle held explicit or implicit power over David. She did not have power over his finances or hold a power of attorney. *Cf. Butler*, 623 A.2d at 182; *In re Will of Fenwick*, 348 A.2d 12, 14 (Me. 1975). David was not enfeebled mentally or physically. *Id.* The evidence before the court at hearing, even when viewed in the light most favorable to Laurie, could not sustain a finding of a confidential relationship of

the sort that normally underpins cases of undue influence. *Knowlton*, 1997 ME 12, ¶ 6, 688 A.2d 912.

[¶19] Viewing the record in the light most favorable to Laurie, we conclude that the court did not err in determining that there was no evidence that could sustain a finding of undue influence by a clear and convincing standard.

The entry is:

Judgment affirmed.

---

Laura P. Shaw, Esq. (orally), Camden Law LLP, Camden, for appellant Laurie Kennedy

Matthew P. Mastrogiacomo, Esq. (orally), The Mastrogiacomo Law Office, PA, Lewiston, for appellee Michelle Washburn

Androscoggin County Probate Court docket number 2016-394
FOR CLERK REFERENCE ONLY